UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:03-CR-223 (EBB) |
| | : | |
| v. | : | |
| | : | February 7, 2006 |
| BERNABE DIAZ | : | |

**UNITED STATES' REPONSE TO DEFENDANT'S MOTION FOR RESENTENCING**

The Government respectfully submits this response to the defendant's motion for resentencing [doc. #95] on this limited remand from the United States Court of Appeals for the Second Circuit.

**I. Procedural History**

On August 5, 2003, a federal grand jury sitting in Bridgeport returned a three-count indictment [doc. #17] against the defendant, Bernabe Diaz. Jury trial was scheduled for February 10, 2004. On February 3, 2004, the Court issued an omnibus ruling [doc. #57] denying a number of pretrial motions filed by Diaz, including a motion to suppress certain evidence. On February 10, 2004, as a consequence of that ruling, Diaz waived indictment and pled guilty to a substitute information [doc. #61] charging him with one count of receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2). In the plea agreement, the parties stipulated that the defendant's offense level would be calculated at 27. Plea Agreement [doc. #62] at 3. The parties also anticipated that his Criminal History Category would be calculated at II. *Id.* The Government reserved the right to move for an upward departure on the ground that CHC II understated the seriousness of the defendant's prior criminal conduct or the likelihood of recidivism.

At a hearing on June 24, 2004, this Court sentenced the defendant to 96 months in

prison, followed by three years of supervised release, plus a mandatory $100 special assessment. 6/24/04 Tr. at 31-33 (attached to defendant's Motion as Exhibit A). In reaching that decision, the Court declined to award the defendant a third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b)(2), in light of his failure to notify the government of his intention to plead guilty before substantial trial preparation had been undertaken. 6/24/04 Tr. at 13.

The Court also granted the Government's motion for an upward departure, placing the defendant in Criminal History Category III. *Id.* at 21. At the time of the initial disclosure of the PSR the defendant had no criminal history points. PSR ¶ 32. On May 27, 2004, after the initial disclosure, the defendant entered *nolo contendere* pleas, and was convicted, on two state criminal charges. The first count involved sexual assault in the second degree, in violation of Conn. Gen. Stat. § 53a-71(a)(1), stemming from the sexual abuse of a minor, the details of which are set forth in some detail in the PSR. The second count was larceny in the first degree in violation of Conn. Gen. Stat. § 53a-122(a)(2), involving massive overbilling of the State of Connecticut in connection with juvenile court proceedings. The Court was aware that the defendant was about to be sentenced to 20 years, suspended after seven years, on these state charges, to run concurrent with any prison term imposed by this Court. An addendum to the PSR concluded that the defendant now fell within CHC II based on those two convictions, each of which counted as a single criminal history point. At sentencing, the Government argued that the significant nature of each of those two offenses was understated by the attribution of only one point apiece, and moved for an upward departure of one CHC, to CHC III. 6/24/04 Tr. at 14-15. By granting the Government's motion, the Court increased the applicable guideline range from 78-97 months to 87-108 months.

By sentencing the defendant to 96 months, the Court thereby selected a prison term that fell within the overlap of the two ranges that would apply under either CHC II or CHC III. Judgment [doc. #76] entered on July 8, 2004.

On July 14, 2004, the defendant filed a timely notice of appeal [doc. #79]. The defendant raised a sole claim, which had not been raised in the district court: That under the Sixth Amendment, this Court should have sentenced the defendant within a guidelines range that was calculated only by reference to facts that the defendant had admitted as part of his guilty plea. At first, the Court of Appeals for the Second Circuit granted the Government's motion for summary affirmance, but stayed issuance of the mandate pending the Supreme Court's resolution of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005). By order filed May 12, 2005, and upon consent of both parties, the Court of Appeals for the Second Circuit vacated its previous order after *Booker* was decided. It remanded the case pursuant to *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), for this Court to determine whether resentencing was necessary in light of *Booker*. The defendant has now filed a motion [doc. # 95] dated January 10, 2006, asking this Court to vacate his judgment and to resentence him.

The undersigned has consulted with defense counsel, and the parties agree that the Court may appropriately resolve the defendant's motion on the papers, without a hearing.

For the reasons set forth below, the Government respectfully submits that the defendant's motion should be denied, and that the Court's original sentence of 96 months should remain undisturbed.

**II. Limited Remands in Light of *Booker* and *Crosby***

In *United States v. Booker*, the Supreme Court held that the United States Sentencing

Guidelines, as written, violate the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury. As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." *Booker*, 125 S. Ct. at 743. This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory maximum penalty for the offense of conviction. The sentence will be subject to appellate review for "reasonableness." *Id.* at 765-66.

The Court of Appeals for the Second Circuit has summarized the impact of *Booker* as follows:

> First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). *Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range,* or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. *Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence.* Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

*Crosby*, 397 F.3d at 113 (emphasis added). When imposing sentence, a district court must be mindful that "*Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *Id.* Both the Supreme Court and the Court of Appeals expect "sentencing judges faithfully to discharge their statutory obligation to 'consider' the Guidelines and all of the other factors listed in section

3553(a), . . . and that the resulting sentences will continue to substantially reduce unwarranted disparities while now achieving somewhat more individualized justice." *Id.* at 114.

In *Crosby*, the Court of Appeals determined that it would remand most pending appeals involving challenges to sentences imposed prior to *Booker* "not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine *whether* to resentence, now fully informed of the new sentencing regime, and if so, to resentence." *Id.* at 117.  In this respect, the Court of Appeals explained that a remand would be necessary to learn "whether a sentencing judge would have imposed a materially different sentence, *under the circumstances existing at the time of the original sentence*, if the judge had discharged his or her obligations under the post-*Booker/Fanfan* regime and counsel had availed themselves of their new opportunities to present relevant considerations." *Id.*  "In making that threshold determination, the District Court should obtain the views of counsel, at least in writing, but 'need not' require the presence of the Defendant . . . ." *Id.* at 120.  The defendant should, however, have an "opportunity . . . to avoid resentencing by promptly notifying the district judge that resentencing will not be sought." *Id.* at 118.  "Upon reaching its decision (with or without a hearing) whether to resentence, the District Court should either place on the record a decision not to resentence, with an appropriate explanation, or vacate the sentence and, with the Defendant present, resentence in conformity with the [Sentencing Reform Act], *Booker/Fanfan*, and this opinion, including an appropriate explanation, *see* § 3553(c)." *Id.* at 120.

### III.    Discussion

The only question before the Court on this limited remand is whether the Court would have imposed a nontrivially different sentence on June 24, 2004, had it been operating under the

advisory guideline regime. Three facts from the sentencing hearing demonstrate that the Court would have imposed the same sentence. Accordingly, no resentencing is warranted.

First, although under no legal obligation to do so, this Court chose to exercise its discretion to upwardly depart from the default guideline range, in recognition of the unusual severity of Mr. Diaz's history of criminal conduct. Even in the pre-*Booker* sentencing regime, the Court had unfettered discretion to deny the Government's motion for an upward departure, and such an exercise of discretion would have been unreviewable on appeal. Moreover, the defendant was free to make any arguments to this Court in an effort to convince the Court not to grant the upward departure. By choosing to depart upward in the absence of any legal obligation to do so, the Court implicitly indicated that it had considered all mitigating factors raised by the defense, and found them outweighed by the need to factor the defendant's understated criminal history into the sentencing calculus.

Second, this Court sentenced the defendant close to the midpoint, rather than at the bottom, of the final guideline range of 87-108 months. This Court was undoubtedly aware of its unfettered discretion to choose any sentence within a properly calculated guideline range, and to consider any and all facts proffered by the parties in making that decision. *See* 18 U.S.C. § 3742 (providing that a district court may consider all types of information, without limitation, at sentencing). Moreover, the Court's choice of a particular sentence within the 87-108 range was fully informed by all of the factors listed in 18 U.S.C. § 3553(a). The defendant had every reason to develop and advance arguments based on those factors, in an effort to obtain the lowest possible sentence within the range. Having had the opportunity to do so, and having had this Court necessarily decide that a 96-month term was needed to achieve the purposes set forth in

§ 3553(a), the defendant has no basis for claiming that the Court would have acted otherwise had it known of *Booker*.

Third, this Court expressed its stern disapproval of Mr. Diaz's misconduct, describing it as "one of the more sordid cases that have come before me in my thirty years as a judge." The Court's remarks are more fully set forth below:

> Thank you. The guideline range which we have determined to be appropriate in this case, as I said before, is 87 to 108 months. I understand the distinction you're drawing in terms of people who routinely produce this kind of pornography. That's not the case here.
> Nevertheless, it's very difficult for me to understand how with all of the factors that you enumerated before – your client is a self-made man, became a lawyer, was a police officer – what in the world happened to have him indulge in not only this conduct but the conduct for which he's taking a sentence in State court. It's very difficult to understand.
> *But, nevertheless, I have to deal with one of the more sordid cases that have come before me in my thirty years as a judge,* and I do not discount your concern about the culpability of the Co-Defendant. I am quite aware of that. It seems to me appropriate to sentence the Defendant and I do sentence him to the custody of the Bureau of Prisons for a period of 96 months. I'm also placing him on supervised release for a period of three years.

6/24/04 Tr. at 30-31 (emphasis added). Given the sensitive nature of the underlying facts, and the involvement of a minor victim, the Government respectfully refers the Court to paragraphs 5-17 of the PSR for a sad illustration of why this is, as the Court described it, a particularly sordid case.

In his present motion, the defendant incorrectly argues that the Court was precluded by operation of U.S.S.G. § 5H1.1 to § 5H1.6 "from considering [several factors] at the Defendant's sentencing." Mot. at 4. The defendant first claims that the Court was prohibited from considering his "history and characteristics," and most particularly his age and health. *Id.* He also claims that the Court was prohibited from considering his educational and vocational skills,

7

as well as his family ties and responsibilities. *Id.* The defendant's argument is incorrect because Part H of Chapter 5 of the Guidelines does not "proscribe" consideration of any of these factors, except "in determining whether a *departure* is warranted." *See* U.S.S.G. § 5H1.1 (age); § 5H1.2 (educational and vocational skills); § 5H1.4 (physical condition); § 5H1.5 (employment record); § 5H1.6 (family ties and responsibilities). The guidelines therefore contemplated that the Court *could* consider each of these factors when determining the appropriate point within the guideline range to sentence the defendant. Indeed, defense counsel ably presented many of these factors to the Court at the sentencing hearing. *See* 6/24/04 Tr. at 21-24 (describing defendant's family and early educational background; military service; asthma; police career; college and law school education; involvement in child custody disputes; and work ethic and good behavior in prison). Likewise, the PSR presented relevant information on each of these points to the Court. PSR ¶¶ 36-40 (personal and family data), ¶ 41-42 (marital history), ¶ 43 (physical condition), ¶ 46 (educational and vocational skills), ¶ 47 (employment record), ¶ 50 (military record).

In short, the sentencing regime in force at the time of the defendant's original sentencing authorized this Court to consider all of these factors when choosing a point within the applicable sentencing range. This Court elected to upwardly depart based on the defendant's criminal history, and then to choose a sentence near the midpoint of the enhanced range. Because these various factors did not lead the Court to impose a sentence at the low end of the applicable guideline range, or to decline to exercise its discretion to depart upward, there is no basis for concluding that the Court would have imposed a materially different sentence, had it known that the Guidelines were advisory.

**IV. Conclusion**

For all of the above reasons, the Government respectfully requests that the Court deny the defendant's motion for resentencing, and issue a brief order containing "an appropriate explanation" for that decision, in conformity with *Crosby*, 397 F.3d at 120.

In the Government's view, it would suffice for this Court to state that it had considered at the original sentencing all of the factors set forth in 18 U.S.C. § 3553(a); that it did not believe any of those factors warranted either a sentence at the low end of the applicable guideline range, or denial of the Government's motion for upward departure; and that on balance the Court would have imposed the same 96-month sentence even if it had been operating under the advisory guidelines regime instituted by *Booker*.

<div style="margin-left: 50%;">

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


WILLIAM J. NARDINI
ASSISTANT U.S. ATTORNEY
Federal Bar No. CT16012
157 Church Street, 23rd Floor
New Haven, CT  06510
Tel.: (203) 821-3748
Fax: (203) 773-5377
william.nardini@usdoj.gov

</div>

CERTIFICATE OF SERVICE

      I hereby certify that on this 7th day of February, 2006, a true and correct copy of the foregoing Motion was served by first-class mail upon defense counsel:

> Eugene J. Riccio
> The Law Offices of John R. Gulash, Jr. & Eugene J. Riccio
> P.O. Box 9118
> 350 Fairfield Avenue
> Bridgeport, CT 06601

 

_____
William J. Nardini
Assistant U.S. Attorney